UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BENJAMIN LOUIS COCKRUM** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-5329** |
| **BESSIE CARTER, CASEY MCVEA, ROBERT TANNER** | **SECTION "I"(4)** |

## ORDER AND REASONS

Before the court are a **Motion for Preliminary Injunction (Rec. Doc. No. 14)** and a **Motion for Temporary Restraining Order (Rec. Doc. No. 16)** filed by the *pro se* plaintiff Benjamin Louis Cockrum, an inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana. Cockrum seeks an order to compel the prison officials to provide him with medical treatment. There is no indication in the record that Taylor served a copy of the motions on the defendants nor have the defendants replied to the motions.

## I.     Factual Background[1]

Cockrum filed this *pro se* and *in forma pauperis* complaint under 42 U.S.C. § 1983 against Warden Robert Tanner, Bessie Carter, and Dr. Casey McVea. Cockrum alleges that, on January 17, 2007, he injured his left elbow while attempting to flee from the police when he jumped off of a balcony. He was taken to an orthopedic specialist at University Hospital. He claims that he was told that the hinge joints and radius head would not heal properly and would cause him to suffer with chronic arthritis and pain.

---

[1] The Court held a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), January 15, 2014, at which the plaintiff reiterated the factual basis for his claims against the defendants. Rec. Doc. No. 19. The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

He further alleges that, beginning in October of 2012, he first saw Dr. Casey McVea for pain in his left elbow.  The doctor prescribed motrin and ordered x-rays, which showed no progress in the joint.  Cockrum alleges that he saw Dr. McVea again in November of 2012, and was told that the medical committee declined to provide him with surgery or additional pain management medication.

He soon thereafter was sent to an orthopedist at University Hospital and additional x-rays were taken.  Cockrum claims that the doctor recommended that he be given 50 mg. tablets of Ultram[2] three times per day for the pain.  He was later advised at the prison that the request for Ultram was denied and he would continued on Motrin.  He continued to file sick call complaints to no avail.

Dr. McVea eventually referred him back to the orthopedist.  Cockrum claims that the doctor gave him a cortozone injection in the left elbow and again ordered that he receive Ultram.  He claims that Dr. McVea again refused the doctor's recommendation.

After continued pain complaints, Dr. McVea ordered a different medication called "Mobic," which did not provide any more relief.  Dr. McVea then referred Cockrum to the tele-med doctor and he was seen on May 3, 2013.  The doctor ordered that Cockrum receive 50 mg. tablets of Ultram three times per day.  However, he was later advised by EMT Jane Hillman that Dr. McVea discontinued the order and reinstated the Mobic.

Cockrum further alleges that two and one-half months passed without him being seen by Dr. McVea.  During that time, he filed numerous requests for care for the pain and new manifestations

---

[2]Ultram is used for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment for their pain for an extended period of time. *Physicians' Desk Reference*, 62nd Ed., p. 2366 (Thomson 2008) ("*PDR*").

of swelling and joint problems in his arm and hand. He received written replies to his complaints in which Dr. McVea indicated that the request for Ultram was denied due to prior abuse of medication. He also claims that Dr. McVea threatened him with a disciplinary rule violation for his continued suggestions that he was being denied medical care. He claims that Dr. McVea did see him again in July of 2013, at which time he was given a Percogesic injection into the hinge joint for pain and Indocin, a non-steroidal anti-inflammatory, was ordered along with additional x-rays.

Cockrum also alleges that he sued Bessie Carter and Warden Tanner because his grievance complaints were denied and no actions were taken against Dr. McVea.

**II.    Analysis**

Cockrum first filed a motion for issuance of a Preliminary Injunction to compel Dr. McVea to provide him with the stronger pain medication prescribed by another doctor for the chronic pain he suffers in his left elbow and pain in his lower back. In the later filed request for a Temporary Restraining Order ("TRO"), Cockrum voices the same concerns complaining that he is suffering with continued pain because Dr. McVea will not agree to provide a stronger prescription pain medication. Under a broad reading, Cockrum claims that if relief is not granted, he will continue to suffer in severe pain and eventually could loose the use of his left arm.

The law is well settled that issuing an injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989). An injunction is to be the exception, not the rule. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). Furthermore, in the prison setting, requests for a preliminary injunction are "viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and

3

intractable problems of prison administration.'" *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)). "Except in extreme circumstances," the "federal courts are reluctant to interfere" with matters of prison administration and management, including prison discipline and classification of inmates. *Young v. Wainwright*, 449 F.2d 338, 339 (5th Cir. 1971) (affirming denial of injunction to obtain release from administrative segregation).

With these provisos in mind, the Court may issue a preliminary injunction or TRO in accordance with Fed. R. Civ. P. 65, which reads in relevant part as follows:

> (a) Preliminary Injunction.
> (1) Notice. The court may issue a preliminary injunction only on notice to the adverse party.
> (2) Consolidating the Hearing with the Trial on the Merits. Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.
>
> (b) Temporary Restraining Order.
> (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

As noted previously, the record does not reflect that Cockrum provided notice of his intent to seek the preliminary injunction or the TRO to the defendants or their counsel. Cockrum did not request that either motion be noticed for hearing, and he instead submitted them *ex parte* with proposed orders. Without notice to the defendants, he is not entitled to the preliminary injunction, and the Court can find no reason to call a hearing. In this circuit, when an injunction is requested without a hearing and notice to all parties, it is considered to be a TRO not a preliminary injunction.

4

*Accord Turner v. Epps*, 460 F. App'x 322, 326 (5th Cir. 2012) (recognizing that an injunction order is not construed based on the label it was given but whether it was issued after notice and hearing).

Nevertheless, the standards to obtain both a preliminary injunction and a TRO are substantively the same anyway. A TRO is "simply a highly accelerated and temporary form of preliminary injunctive relief." *Hassani v. Napolitano*, No. 09-CV-1201-D, 2009 WL 2044596, *1 (N.D. Tex. 2009). Thus, the Court will consider both motions as seeking issuance of a TRO.

A party requesting a TRO must establish four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction will cause to the adverse party; and (4) the injunction will not do disservice to the public interest. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). Because such relief is an extraordinary remedy, to justify entry of a TRO or preliminary injunction, the petitioner must "clearly carr[y] the burden of persuasion on all four elements." *PCI Transp., Inc. v. Fort Worth & W. R.R. Co*., 418 F.3d 535, 545 (5th Cir. 2005); *Bluefield Water Ass'n v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009). In the instant case, Cockrum fails to meet this heavy burden or show a basis for relief at this time.

Under the first prong, Cockrum must show a substantial likelihood that he can prove that prison officials, specifically Dr. McVea, acted with deliberate indifference to his medical needs so as to cause "unnecessary or wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). This requires proof that the prison officials were subjectively aware of a substantial risk of serious harm and were deliberately indifferent to that risk. *Hare v. City of Corinth*, 74 F.3d 633, 648-49 (5th Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). In this case, Cockrum must prove that Dr. McVea was aware of a substantial risk of serious harm subjectively intended that harm

occur. *See Thompson v. Upshur County*, 245 F.3d 447, 458-59 (5th Cir.2001) (citing *Hare*, 74 F.3d at 649-50).

Thus, in the context of medical care to prisoners, courts have found that a prisoner's disagreement with the medical care offered does not suffice to establish a claim of deliberate indifference to serious medical needs. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977)).  It also is not enough that the plaintiff allege that a diagnosis was incorrect. *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).  Instead, the prisoner must establish that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).  Cockrum has not done so here.

In this case, Cockrum concedes in his various pleadings that he has been examined by Dr. McVea and other medical personnel at the prison.  He indicates that he has even been referred by Dr. McVea to outside orthopedic specialists.  It is Dr. McVea's alleged variance from the prescriptions ordered by these doctors with which Cockrum takes issue.  Cockrum claims that the orthopedic specialists have recommended that he be given Ultram for his pain.  Cockrum, nevertheless, recognizes that Dr. McVea will not authorize the dispensing of the Ultram as prescribed based on Cockrum's past abuse of pain medication.  Herein lies what initially appears to be the difference of opinion over the appropriate course of treatment coupled with prison security concerns.  The facts alleged do not show that Dr. McVea subjectively intended to harm Cockrum. For this reason, Cockrum has not clearly shown that he will ultimately prevail on his claims of medical indifference by Dr. McVea.

Furthermore, under the second prong, Cockrum has not provided specific facts, other than his conclusory conjecture, to show that an immediate and irreparable injury, loss, or damage will result to him or his arm. A restraining order should only be issued when "a substantial threat of harm to the movant . . . cannot be compensated by money." *Harvey Barnett, Inc. v. Shidler*, 143 F. Supp.2d 1247, 1255 (D. Col. 2001). As Cockrum represents, he has received continued care and examination with no new injury or diagnosis other than his subjective pain. Although he continues to complain of pain and alleged diminished use of his arm, his suggestion is based on his subjective representations without any showing at this time that he faces a permanent or imminent danger or any other injury, including pain and discomfort, that cannot be compensated monetarily. Instead, it appears that he is merely trying to expedite the relief sought in his complaint, access to stronger pain medication, which is not alone a proper basis for issuing an injunction at this time. *See Guthrie v. Niak*, No. 12-CV-1761, 2013 WL 5487936, at *6 (Sep. 27, 2013) (injunction does not serve to expedite resolve of the complaint).

Considering the third prong, therefore, Cockrum has not shown that any threatened injury, or continued pain, outweighs the burden a TRO would place on the defendants. This is true especially in light of the Court's "reluctan[ce] to interfere" with matters of prison administration where Cockrum concedes an issue with medication abuse. *Accord Young*, 449 F.2d at 339. This reluctance also culminates in the long-tradition found in the fourth factor, avoiding a disservice to the common interest, which in this case is in the prison officials discretion to manage their facilities and services within constitutional bounds.

Based on the current record, Cockrum's disagreement with the medical decisions being made, especially in light of the potential for medication abuse as a factor, is not sufficient to

7

establish deliberate indifference by Dr. McVea. Thus, the most crucial requirement needed to succeed on a temporary injunction or preliminary injunction has not been established. He has made no clear showing of his entitlement to a TRO.

Considering the record and pleadings, Cockrum has failed to establish the need for the issuance of a temporary restraining order or preliminary injunction. Accordingly,

**IT IS ORDERED** that Cockrum's **Motion for Preliminary Injunction (Rec. Doc. No. 14)** and **Motion for Temporary Restraining Order (Rec. Doc. No. 16)** are **DENIED**.

New Orleans, Louisiana, this 3rd day of April, 2014.

*[signature]*

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**