UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BENJAMIN LOUIS COCKRUM                              CIVIL ACTION

VERSUS                                              NO.  13-5329

BESSIE CARTER, ET. AL.                              SECTION "I"(4)

REPORT AND RECOMMENDATION

Before the court is a **Motion to Dismiss for Failure to State a Claim Upon which Relief
Can Be Granted (Rec. Doc. 11)** filed by the defendants, Bessie  Carter, Casey McVea, M.D., and
Warden Robert Tanner seeking dismissal of the plaintiff, Benjamin Louis Cockrum's ("Cockrum")
complaint. The motion is opposed. (Rec. Doc. 13)

The case and the motion were referred to a United States Magistrate Judge to conduct a
hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and
recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and ( C ) § 1915e(2), and
§ 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On January 15, 2014, the Court
conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating
by conference telephone call.[2]

---

[1]766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges
to have occurred and the legal basis for the claims.  The information elicited at the hearing is in the nature of an amended
complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir.
1991).

[2]Rec. Doc. No. 19.  The plaintiff was sworn prior to testifying.  The hearing was digitally recorded.

I.      **Factual Background**

A.      **Original Complaint**

Cockrum is an inmate housed in the B.B. Sixty Rayburn Correctional Center("RCC"), in Angie Louisiana . Cockrum filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, Director of Nursing Bessie Carter ("Carter"), Casey McVea, M.D., ("Dr. McVea") and Warden Robert C. Tanner ("Warden Tanner"). Each defendant is sued in their individual and official capacities.

Cockrum alleges that on January 17, 2007, while he was attempting to flee from police, he jumped from a second story balcony and suffered injuries. *See e.g.,* Rec. Doc. No. 1. As a result of the incident, Cockrum alleges that he sustained injuries to his left elbow, the hinge joints and radius head.  He alleges that in October 2012, more than five years later, he was seen by Dr. McVea who became the medical director at RCC, sometime in 2011-2012. *See id.,* at p. 8-9. He alleges that Dr. McVea prescribed him 600mg Motrin for the pain and additionally ordered x-rays of the left elbow.

 Cockrum alleges that later that year, he was seen by an orthopedic doctor at University Hospital, who took x-rays of his left arm and who also discussed pain management with him. The orthopedic doctor recommend Ultram, in a 50mg dosage, three times per day for the pain.[3]

Cockrum alleges that even after the orthopaedic doctor recommended Ultram to assist him, the recommendation was denied, and Dr. McVea again prescribed 600 mg of Motrin for his pain.[4] Shortly thereafter,  Cockrum made another sick call request, complaining that his pain was affecting

---

[3]Ultram is an analgesic, narcotic pain reliever that is similar to morphine and is capable of being abused. *See* Ultram definition, http://www.medicinenet.com/tramadol article.htm 4/3/14.

[4]Motrin  is a non-steroidal, anti-inflammatory drug that is available only  in prescription which is used to treat moderate to mild pain and relieve symptoms of arthritis. *See* Motrin defined, http://www.livestrong.com/article/89825-ibuprofen-mg-side-effects/, 04/04/14.

his daily life activities.  Dr. McVea again referred him to University Hospital to see an orthopaedic doctor. The orthopaedic doctor gave him a cortisone injection, and again recommended Ultram 50mg, three times a day for the pain. However Dr. McVea did not honor the recommendation and instead prescribed Mobic, an anti-inflammatory drug for the pain.[5]

Cockrum alleges that he continued to make sick call requests due to increasing pain and Dr. McVea continued to order Mobic to treat his complaints of pain.  Dr. McVea also referred him to a tele-med doctor for treatment. Cockrum alleges that on May 3, 2013, the tele-med doctor allegedly concluded that Cockrum should be prescribed Ultram Tablets, 50 mg three times a day. Upon his return to RCC, Cockrum allegedly asked a nurse named Leslie when he would received the medication. This nurse allegedly advised him that the medication would be available the following Monday, May 6, 2013, at the latest. However Dr. McVea discontinued the order for Ultram and continued to prescribe Mobic to treat his pain.

Thereafter, Cockrum began a two and one half month campaign for Ultram.  He alleges that he made sick call requests on May 8, 2013, May 22, 2013, May 26, 2013, June 3, 2013, June 9, 2013, June 14, 2013, June 19, 2013, June 24, 2013 and June 30, 2013. *See* Rec. Doc. 1, pp. 10-11. Cockrum alleges that in response to the sick call requests, Dr. McVea indicated that the order for Ultram was only a recommendation, and was not approved because of Cockrum's past history of abuse of medications.

Each time Cockrum requested Ultram, he was told by prison medical officials that none would be ordered. He alleges that on one occasion, he was told that the reason that the

---

[5]Mobic is a nonsteroidal anti-inflammatory drug that reduces inflamation caused by osteoarthritis or rheumatoid arthritis in adults. *See* Mobic defined, http://www.drugs.com/mobic.html, 04/02/14.

recommendation for Ultram was not approved by Dr. McVea, was because he was caught snorting medication on August 20, 2012 and August 24, 2012. *See* Rec. Doc. 1, p. 11.

Cockrum also alleges that Carter threatened him with disciplinary action for a rule violation as a result of inquiring about his medical care. *Id.* Cockrum alleges that the allegations about his abuse of medication were false and he therefore filed a grievance requesting more facts. He contends however, that he did not receive a response to this grievance. Thereafter, he sent a duplicate grievance to which there was no response.

On June 28, 2013, Cockrum sent a letter to Dr. McVea in which he complained of swelling of his fingers, and that his left arm was "locking" and that the pain was increasing. *See id.,* at p. 12. He received a response that he would be seen in ten to fourteen days or on July 10, 2013.

Cockrum, was seen on July 10, 2013, as promised, and was injected with Percogesic[6], into the hinge joints and he was told that this would give him some pain relief. Indocin, a non-steroidal anti-inflammatory drug and Rifampin[7] were also ordered for his pain. Cockrum was instructed to take them three times a day. Four days later, Cockrum alleges that his left arm began to swell and red sores began to appear. He thereafter made another sick call request on July 14, 2013. *Id.* at 13.

On July 16, 2013, he was seen by Dr. McVea, and was admitted to the prison infirmary. He was given an IV containing antibiotics, and was given Ultram 50 mg ever six hours, as needed for

---

[6]Percogesic is a drug that combines 2 medications, acetaminophen and an antihistamine. Acetaminophen helps to reduce fever and/or mild to moderate pain (such as headache, backache, aches/pains due to muscle strain, cold, or flu). *See* http://www.webmd.com/drugs/drug-1640-Percogesic+Oral.aspx?drugid=1640&drugname=Percogesic+Oral, 04/07/10.

[7]Rifampin is used to reduce the development of drug-resistant bacteria and maintain the effectiveness of RIFADIN (rifampin capsules USP) and RIFADIN IV (rifampin for injection USP) and other antibacterial drugs, rifampin should be used only to treat or prevent infections that are proven or strongly suspected to be caused by bacteria. http://www.rxlist.com/rifadin-drug.htm, 04/07/10.

his pain. He also had blood work done for cellulitis,[8] which was ultimately ruled out. He was discharged with Motrin for the pain. Cockrum complains that after his release from the infirmary, his arm remained swollen, and he continued to experience pain. As a result, he submitted another request for sick call on July 28, 2013.

Cockrum also alleges that he filed several grievances beginning on May 3, 2013. He received a response for his initial grievance on May 15, 2013, from Cynthia Crain in case 2013-289, in which she indicated that the grievance was accepted. She advised him that he would receive a response within forty (40) days. On May 29, 2013, Cockrum alleges that he received the first step response from Carter, advising him that his grievance had been denied. The form indicated that the response was verified by Warden Tanner. *See id.,* at p. 13. Thereafter, Cockrum sought review of the denial of the grievance with the Secretary of the Louisiana Department of Corrections. The Secretary affirmed the denial of Cockrum's request for relief. *Id.* at 13-14.

Regarding Carter, Cockrum alleges that she threatened him with a rule violation for seeking "effective medical treatment." He seeks damages from Dr. McVea for discontinuing his prescription for Ultram, and replacing it with Motrin or Mobic, as he alleges that these drugs caused him to experience unwanted pain and suffering. He also seeks damage for the two and one half month delay he contends occurred by Dr. McVea, in providing medical care to him. As a result, he seeks injunctive relief in the form of restoration of his prescription of Ultram 50 mg, three times a day for effective pain management treatment, as was prescribed by the tele-med doctor. Lastly, Cockrum seeks compensatory damages.

---

[8]Cellulitis is a skin infection caused by certain forms of bacteria.
*See* http://www.webmd.com/skin-problems-and-treatments/tc/cellulitis-top*ic-overview,* 04/07/14.

5

### B.   **Amended Complaint**

On October 15, 2013, Cockrum filed a "Motion to Retaliation for Filing"(Rec. Doc. No. 10) which was construed by this Court as an amended complaint. According to the pleading, Cockrum complains that he has a right to redress his grievances with the government, which were allegedly impacted because his documentary evidence was removed when his cell was searched at 4:15 a.m one morning, and his property bag was returned seven hours later. As a result of this search, he contends that he was not afforded due process because evidence of witness statements, were allegedly removed from his bag without a hearing.  The motion was denied on December 11, 2013. (Rec. Doc. No. 15).

### C.   ***Spears* Hearing**

On January 15, 2014, the undersigned conduct a Spears hearing with Cockrum. During the hearing, Cockrum testified his current medical state arises out of a pre-existing medical injury that occurred seven years prior. He testified that in 2007, while trying to escape from police, he jumped off the second floor of a hotel and fell onto his left arm, crushing the growing plates, bone fragments and as a result, caused his left arm to remain locked in one position. He was also unable to fully extend his arm. He testified that following this accident, he was also diagnosed with chronic pain by the Louisiana State University ("LSU") Medical Center. Since he has been in RCC however, he contends that he lost movement in his left arm. He testified that corrective surgery was recommended by the LSU orthopedic specialist in 2008, when he was diagnosed with chronic pain and chronic arthritis.

Cockrum testified that following this incident, he was arrested and jailed with 17 counts of forgery of an automobile dealership and has been incarcerated ever since. From May 2007 to September 2012 he was treated by Dr. Thomas and Dr. LaRavia. He testified that the first

recommendation was to have corrective surgery to the elbow. He also testified that he was prescribed Bactrefin [sic] and Ultram.  According to Cockrum however, the prison physician did not agree with this recommendation and instead prescribed him Neurotin 600 mg, and Agrifin 10 mg.

Cockrum testified that this treatment was successful, and that problems did not arise until Dr. McVea became a doctor at RCC. He contends that the treatment provided before Dr. McVea was successful, but that once Dr. McVea began working at the prison, the treatment changed. Since Dr. McVea began treating him, Cockrum contends that his pain has increased, and that he has lost mobility.

He testified that Dr. McVea sent Cockrum back to LSU Medical Center, which recommended pain management treatment consisting of  Ultram, 100 mg three times a day, based on his complaints of pain. However, Cockrum testified Dr. McVea refused to give him the prescription, even though Dr. McVea advised him on May 3, 2013, that he would adhere to whatever the tele-med doctor recommended. Cockrum testified that the Ultram order was again issued by the tele-med doctor because his pain requires this type of medication. However, Dr. McVea again allegedly refused to adhere to the tele-med doctor's recommendation, as he was given Tylenol 600 mg, which did not reduce his pain.

Cockrum also testified that on July 10, 2012, he again saw Dr. McVea, and was administered a shot between his joints. After the shot, Cockrum contends that his left arm began to swell. He contends that he told Dr. McVea that his arm was not responding well to the shot, but Dr. Mc Vea told Cockrum that he should not worry. However, Cockrum's condition did not improve. His condition actually began to worsen, as he began to develop sores around the area of the shot.

7

He testified that he ended up back in the prison's infirmary for seven days, where he was given Ultram for the pain. However, upon his release from the infirmary, the prescription of Ultram was discontinued, and he was prescribed Mobic for the pain. Cockrum contends that he is still suffering and that he lives with pain on a daily basis. Cockrum also testified that he re-damaged the arm as a result of two subsequent falls, one which occurred due to sweat on the floors, while he was exiting the tier. According to Cockrum, Major Rogers and several other prison officials picked him up him off of the floor and took him to the medical unit to see the nurse practitioner, Linda Hodgins. He testified that he slipped due to the traction on the floor and shoes provided by the prison.

Although an x-ray was taken of his arm while he was in the infirmary, Cockrum testified that he believes that he will never receive the proper treatment for the pain in his arm. He also clarified that in his amended complaint, which was also a motion to retaliate, he was seeking damages for the slip and fall and also to hold Dr. McVea responsible as a result of the treatment after the fact.

Cockrum testified that he had documentation and other evidence dealing with witness statements that he was going to send in support of his case which came up missing after his cell was searched. He complains that he was able to retrieve the witness statements later and as a result, he no longer sought any damages about the search. As a result, Cockrum testified that he therefore authorized dismissal of his complaint regarding the seizure of his documents. Cockrum further testified that he filed the subject lawsuit to secure proper medical care and also for damages against Dr. McVea for the lack of adequate medical care.

Defendants have filed a Motion to Dismiss which is opposed by Cockrum. However, before proceeding to the merits of defendants' motions, the Court is called upon to conduct its statutory

review for frivolousness of this *in forma pauperis* complaint under 28 U.S.C. § 1915 *et seq*. and 42

U.S.C. 1997e. As a result, the Court does not reach the merits of the motion because in conducting

its statutory frivolous review, the Court finds that the claims are frivolous as detailed below.

**II.**     **Standards of Review**

    **A.**     **Frivolousness**

      Title 28 U.S.C. §§ 1915A and Title 42 U.S.C. §§ 1997e ( C ) require the Court to *sua sponte*

dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are

frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See*

*Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d

114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of

questionable legal theories or unlikely factual allegations in the complaint.

      Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or

in fact.  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).

A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such

as if the complaint alleges the violation of a legal interest which clearly does not exist.  *Harper v.*

*Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts

alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional

allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28.

Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably

meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins*, 27 F.3d 174, 176

(5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976

F.2d 268, 269 (5th Cir. 1992).

**B.**   **Motion to Dismiss**

When considering whether a complaint states a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6), the court must take the factual allegations of the complaint as true and resolve any ambiguities regarding the sufficiency of the claim in the plaintiff's favor. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *American Waste & Pollution Control Co. v. Browning-Ferris*, Inc., 949 F.2d 1384, 1386 (5th Cir. 1991). The complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Home Builders Ass'n of Ms., Inc. v. City of Madison, Ms.*, 143 F.3d 1006, 1010 (5th Cir. 1998); *Home Capital Collateral, Inc. v. FDIC*, 96 F.3d 760, 764 (5th Cir. 1996); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284-85 (5th Cir. 1993). Where it appears from the face of the complaint that the applicable limitations period has run, an action is subject to dismissal for failure to state a claim upon which relief may be granted under Rule 12(b)(6). *See Songbyrd, Inc.* v. *Bearsville Records, Inc.*, 104 F.3d 773, 776, n.3 (5th Cir. 1997), *cert. denied*, 121 S.Ct. 68 (2000).

To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**III**.   **Analysis**

   **A.**   **Denial of Effective Grievance Process**

Cockrum's claim against both Warden Tanner and Carter arise out of his dissatisfaction with the grievance procedure and / or the denial of his grievances. However, a prisoner does not have a "federally protected liberty interest in having these grievances resolved to his satisfaction." *Geiger v. Jowers*, 404 F.3d 371, 373-74, n.7 (5th Cir. 2005); citing *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir.1995) (quoting *Sandin v. Conner*, 515 U.S. at 484). *See also Banks v. Cain*, Civ.A.03-310-D-M1, 2003 WL 23997326 at *1-2 (M.D. La. Aug. 12, 2003) (prisoner does not have constitutionally protected right to a favorable appeal decision in disciplinary proceedings).

Therefore, Cockrum's claims against Warden Tanner and Carter fail as a matter of law, because an inmate does not have a "free-standing constitutionally right to an effective grievance process." *Woods v. First Corr. Med., Inc.,* 446 Fed. App'x. 400, 403 (3d Cir. 2011);(*citing Flick v. Alba,* 932 F.2d 728m, 729 (8th Cir. 1991). As a result, Cockrum cannot maintain a constitutional claim based upon his perception that his grievances were not favorably handled or that the process is inadequate.  For the aforementioned reasons, Cockrum's claims against Warden Tanner and Carter are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915 (e)(2)(B)(I) and §1915(b)(1).

   **B.**   **Disciplinary Threat for Filing Grievance**

Cockrum also claims that Carter threatened to write him up for a disciplinary violation if he continued to file grievances because he disagreed with the type of treatment provided by Dr. McVea. Cockrum does not allege that Carter followed through on the alleged threat to file a disciplinary

complaint. The essence of Cockrum's claim is that Carter threatened to retaliate against him for filing multiple grievances.

Prison officials may not retaliate against a prisoner for exercising his first Amendment Right about complaining through the proper channels about a prison officials conduct. *Morris v. Powell* 449 F.3d 682, 684 (5th Cir. 2006); *Woods v. Smith*, 60 F. 3d 1161, 1164 (5th Cir. 1995). In order to state a claim for retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Morris,* 449 F.3d at 684; citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir.1998).

The purpose of allowing inmates to bring retaliation claims under 42 U.S.C. § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights. *Morris*, 449 F.3d at 686 (citing *Crawford–El v. Britton*, 523 U.S. 574, 588, n. 10(1998)). Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. *Morris*,.3d at 686. De minimis acts that would not deter an ordinary person from further exercise of his rights do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.* Adverse acts that cause an inmate only a "few days of discomfort," impose "a [single] minor sanction," or impose an otherwise constitutional restriction on the inmate would be de minimis acts. *Id.* at 685–86. *See e.g., Gibbs v. King,* 779 F.2d 1040, 1046 (5th Cir.1986) (dismissal of a prisoner's §1983 claim upheld, writing that "a single incident, involving a minor sanction, is insufficient to prove [retaliatory] harassment."). Furthermore, the Fifth Circuit also indicated that "this Court has refused to recognize retaliation claims based only

on allegations of insignificant retaliatory acts." *Id.* at 685; *Pierce v. Tex. Dep't of Crim. Justice, Institutional Div.,* 37 F.3d 1146, 1149 n. 1 (5th Cir.1994).

Cockrum alleges that Carter threatened him with a "rule violation for seeking effective medical treatment." However, he does not allege that his ability to file a grievance was ever impacted, nor does he allege that Carter followed through on the alleged threat. Because threats of retaliation fail to state a claim for retaliation where there is no adverse act, Cockrum's allegation fails to state a claim of retaliation as a matter of law, as here, there is no suggestion of an adverse act. As a result, Cockrum's claim that Carter threatened to retaliate again him is frivolous and otherwise fails to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915 (e)(2)(B)(I) and §1915(b)(1).

### C.   Deliberate Indifference to his Medical Needs

Cockrum complains that he was diagnosed with arthritis and chronic pain as a result of the crushing bone injury he sustained when he attempted to flee from police in 2007. Cockrum alleges that several doctors, including  a doctor from LSU, and a tele-med doctor, recommended that he receive Ultram, to treat his continuing complaints of severe pain.

Cockrum alleges that Dr. McVea, refused to administer Ultram to him despite the recommendations of the other physicians, and instead prescribed Mobic and Motrin 600 mg to treat his chronic pain.   He complains that the failure to comply with the other doctors recommendation constitutes deliberate indifference to his serious medical needs.

The standard of conduct imposed on defendants with respect to medical care of inmates was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976).  In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the

"unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Id.* at 104. This is true where the indifference is manifested by prison doctors in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.*

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.* Further, disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, while malpractice or negligent care does not. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action"); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or *failing to supply* medical treatment would not support an action under Section 1983"). *See Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

In addition, the mere delay alone in receiving medical treatment is usually not sufficient to state a claim under § 1983. *Mendoza*, 989 F.2d at 195; *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990); *Simmons v. Clemons*, 752 F.2d 1053, 1056 (5th Cir. 1985). Regardless of the length of the delay, the plaintiff at a minimum must show deliberate indifference to a serious medical need to rise to the level of a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294 (1991); *see also Estelle,* 429 U.S. at 104-05.

In the case at bar, Cockrum does not allege facts sufficient to rise to the level of a constitutional violation. Accepting his allegations as true, Cockrum alleges that after he filled out

sick call requests, he was examined by Dr. McVea, and received treatment by him. He also testifies

that he was prescribed Mobic or Motrin and not Ultram as recommended by other doctors.[9] Cockrum

alleges that Dr. McVea refused to provide him Ultram in August 2012, because he allegedly crushed

the pill and snorted it, which was construed as an abuse of the medication by Dr. McVea.

Each of Cockrum's sick call requests and his subsequent hunger strike were because he

sought to have Dr. McVea administer the Ultram.  Therefore, even though Cockrum complains that

there was originally a two and one half month delay in treatment, the Court finds that these claims

do not constitute deliberate indifference. Cockrum's own complaint and testimony establishes that

he received medical treatment from Dr. Mc Vea, however he disagreed with his medical judgment

as to the best medication to treat Cockrum's chronic pain and/or arthritis. Although Cockrum may

have disagreed with the pain management therapy made available to him by Dr. McVea, the record

does not indicate that Dr. McVea acted with deliberate indifference.

While Cockrum is entitled to adequate medical care; he is not entitled to the treatment of his

choice. Therefore, the Court finds that the deliberate indifference claim arising out of the medical

care Cockrum received is frivolous or fails to state a claim for which relief may be granted, pursuant

to to 28 U.S.C. § 1915 (e)(2)(B)(I) and §1915(b)(1).

**D.    <u>Negligence Claim</u>**

Cockrum also testified during the *Spears*  hearing that he seeks damages for the October

2012 slip and fall that occurred as a result of  sweat on the floor which was raised in his Second

Motion to Amend or Correct. *See* Rec. Doc. No. 18. However, the Court denied Cockrum's motion

on April 2, 2014, indicating that Cockrum attempts to raise new claims against Dr. McVea arising

---

[9]*See also Smith v. Montefiore Med. Ctr.- Health Servs.* Div., 22 F. Supp.2d 275 (S.D.N.Y. 1998).

from his disagreement with the treatment after his fall on that one occasion in November. *See e.g.,* Rec. Doc. No. 21. The Court found these claims to be unrelated to those raised in the original complaint, and to allow those claim at this time into this litigation would unduly burden the defendants and the Court, causing the litigation to refocus on the level of care received after the unrelated fall rather than the alleged complete denial of care forming the basis of the original complaint. *Id.* Therefore, because this Court has already denied Cockrum's ability to assert said claims into this action, they are not part of this frivolous review.

**IV.**     **Recommendation**

**IT IS RECOMMENDED** that Cockrum's § 1983 claims against Warden Robert Tanner, Bessie Carter and Dr. Casey McVea be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e.

**IT IS FURTHER RECOMMENDED** that the **Motion to Dismiss ( Rec. Doc. No. 11)** filed by the defendants, Bessie Carter, Dr. Casey McVea and Warden Robert Tanner be **DENIED as MOOT**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[10]

New Orleans, Louisiana, this 8th day of April 2014.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[10]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

17